IN THE

# United States Court of Appeals
# For the District of Columbia Circuit

ELIZABETH SCHACHT, M.D.,

*Appellant,*

v.

STEVEN L. LIEBERMAN, in his official capacity
as Acting Principal Under Secretary for Health,
Department of Veterans Affairs, Veterans Health Administration, *et al.*,

*Appellees.*

**On Appeal from the United States District Court
for the District of Columbia
No. 1:20-cv-2148
Hon. Christopher R. Cooper**

**REPLY BRIEF FOR APPELLANT ELIZABETH SCHACHT, M.D.**

Brandon L. Arnold
Mark H. Russell
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202.471.3043
Facsimile: 202.775.4510
Barnold@Kramerlevin.com

*Counsel for Appellant
Elizabeth Schacht, M.D.*

July 26, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

GLOSSARY............................................................................................v

INTRODUCTION ................................................................................... 1

ARGUMENT ...........................................................................................2

I.    THE BOARD ARBITRARILY AND CAPRICIOUSLY EXCLUDED DR. SCHACHT'S EVIDENCE.................................2

    A.    The Government's New Exception to *Regents* Is Contrary to Law ...................................................................................2

    B.    Even If The Court Could Consider The Board's *Post Hoc* Rationalization, It Should Still Vacate The Board's Actions ...............8

    C.    The Board's Error Prejudiced Dr. Schacht ........................................14

II.    THE BOARD FAILED TO CONSIDER A RELEVANT FACTOR IN ITS PENALTY DETERMINATION.......................................21

CONCLUSION ......................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Action on Smoking & Health v. C.A.B.*,
713 F.2d 795 (D.C. Cir. 1983).................................................................5

*Alpharma, Inc. v. Leavitt*,
460 F.3d 1 (D.C. Cir. 2006).....................................................................6

*Am. Textile Mfrs., Inc. v. Donovan*,
452 U.S. 490 (1981).................................................................................2

*AT&T Info. Sys., Inc.v. GSA*,
810 F.2d 1233 (D.C. Cir. 1987)..............................................................4

*Bhd of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
972 F.3d 83 (D.C. Cir. 2020)...................................................................5

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012).................................................................................7

*Common Cause v. Fed. Election Comm'n*,
842 F.2d 436 (D.C. Cir. 1988)................................................................5

*Dep't of Com. v. New York*,
139 S. Ct. 2551 (2019).............................................................................5

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
140 S. Ct. 1891 (2020)..........................................................1, 2, 3, 4, 5, 6, 7

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)..........................................................................12, 13

*End Citizens United PAC v. Fed. Election Comm'n*,
69 F.4th 916 (D.C. Cir. 2023)..........................................................3, 4, 5, 6, 8

*End Citizens United PAC v. Fed. Election Comm'n*,
2022 WL 1136062 (D.D.C. Apr. 18, 2022)...........................................4

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)...............................................................................12

*Gates & Fox Co. v. Occupational Safety & Health Rev.*
  *Comm'n,*
  790 F.2d 154 (D.C. Cir. 1995)............................................................11

*Gen. Elec. Co. v. U.S. Env't Prot. Agency,*
  53 F.3d 1324 (D.C. Cir. 1995)..................................................9, 10, 11

*Kotteakos v. United States,*
  328 U.S. 750 (1946).....................................................................21

*Manin v. NTSB,*
  627 F.3d 1239 (D.C. Cir. 2011)......................................................15

*Michigan v. EPA,*
  576 U.S. 743 (2015).....................................................................1, 2

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto.*
  *Ins. Co.,*
  463 U.S. 29 (1983).......................................................................23

*Muwekma Ohlone Tribe v. Salazar,*
  708 F.3d 209 (D.C. Cir. 2013)..........................................................6

*Olivares v. TSA,*
  819 F.3d 454 (D.C. Cir. 2016)..........................................................6

*PDK Labs. Inc. v. DEA,*
  362 F.3d 786 (D.C. Cir. 2004)........................................................15

*Prairie State Generating Co. v. Sec'y of Labor,*
  792 F.3d 82 (D.C. Cir. 2015)..........................................................14

*Purifoy v. Dep't of Veterans Affairs,*
  838 F.3d 1367 (Fed. Cir. 2016) .......................................................22

*Ray v. Berryhill,*
  915 F.3d 486 (7th Cir. 2019) ..........................................................16

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Saad v. S.E.C.*,
    718 F.3d 904 (D.C. Cir. 2013)......................................................17, 22

*Satellite Broad. Co., Inc. v. F.C.C.*,
    824 F.2d 1 (D.C. Cir. 1995)...............................................................10

*Sea "B" Mining Co. v. Addison*,
    831 F.3d 244 (4th Cir. 2016) ..............................................................21

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982).............................................................13

*Spiva v. Astrue*,
    628 F.3d 346 (7th Cir. 2010) ..............................................................15

*St. Regis Paper Co. v. United States*,
    368 U.S. 208 (1961)...............................................................................2

*Tourus Records, Inc. v. DEA*,
    259 F.3d 731 (D.C. Cir. 2001)..........................................................6, 7

*United Airlines, Inc. v. Transp. Sec. Admin.*,
    20 F.4th 57 (D.C. Cir. 2021)...............................................................22

*Williams v. Soc. Sec. Admin.*,
    586 F.3d 1365 (Fed. Cir. 2009) ..........................................................20

## Other Authorities

eLicense Ohio Professional Licensure, License Look Up – Elizabeth
    Schacht, https://perma.cc/JX5M-LYME (last visited July 26, 2023) ................15

# GLOSSARY

| | |
|---|---|
| The agency | The Department of Veterans Affairs |
| A.R. | Administrative Record |
| App. Br. | Brief for Appellant Dr. Schacht, M.D. |
| The Board | The Disciplinary Appeals Board |
| Dkt. | The District Court Docket |
| The government | Appellees Steven L. Lieberman, in his official capacity as Deputy Under Secretary for Health, Department of Veterans Affairs, Veterans Health Administration; The Disciplinary Appeals Board; and the Eastern Colorado Healthcare System |
| Gov. Br. | Brief for Appellees |
| JA | Joint Appendix |

# INTRODUCTION

"It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked *when it took the action*.'" *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (*Regents*) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)) (emphasis added). The Board of Disciplinary Appeals (the "Board") violated that bedrock rule when it excluded Dr. Schacht's evidence without explanation. Only two years later—after Dr. Schacht had sued and won partial summary judgment—did the Board first attempt to explain itself. But *Regents* is clear that such *post hoc* rationalizations will not do.

Appellees—who we refer to as the "government" for simplicity's sake—argue that *post hoc* rationalizations are only a problem when an agency gives a reason in the first place. That argument contradicts binding precedent and runs contrary to the important values of administrative law that undergird the Supreme Court's decision in *Regents*. The government's proposed loophole would only benefit agencies that flout their duty to give reasons *when* they act. The Court has previously rejected such an act-now-and-explain-later approach, and it should do so again here. In any event, the Board's action cannot stand because its *post hoc* rationalizations are still arbitrary, and those wrongful exclusions, which contradicted the charge brought by the Department of Veterans Affairs (the "agency), prejudiced Dr. Schacht.

Like everyone else in administrative proceedings, Dr. Schacht was entitled to a reason for the actions taken against her. The Board here failed in its obligation to "turn square corners in dealing with the people." *Id.* at 1909 (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)). The Court should, therefore, reverse with instructions to vacate the Board's decision.

## ARGUMENT

## I. THE BOARD ARBITRARILY AND CAPRICIOUSLY EXCLUDED DR. SCHACHT'S EVIDENCE

### A. The Government's New Exception to *Regents* Is Contrary to Law

*Regents* is clear: "[t]he *post hoc* rationalizations of [an] agency . . . cannot serve as a sufficient predicate for agency action." *Regents*, 140 S. Ct. at 1909 (quoting *Am. Textile Mfrs., Inc. v. Donovan*, 452 U.S. 490, 539 (1981)). As the Supreme Court explained, "[i]t is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked *when it took the action*.'" *Id.* at 1907 (quoting *Michigan*, 576 U.S. at 758) (emphasis added). If the contemporaneous reasons are insufficient, courts can remand to allow an agency to "elaborate" on the reasons it gave at the time, but that agency cannot "provide new ones." *Id.* at 1908.

To hear the government tell it, the most arbitrary agencies can easily evade that rule. So long as an agency "states no reasons at all," it can defend its action based on "newly articulated" reasons that it gives years later. Gov. Br. 14 (internal

quotation marks omitted).  The government contends (at 14-15) that there is a "key difference" between an agency statement that provides "*new* reasons for an agency action after the fact and an agency statement that explains why the decisionmakers took the actions they did."[1]  But in cases like this one that "key difference" is no difference at all.  As the government concedes (at 6), the Board here acted "without explicating its reasoning."  Given that the Board offered *no* reasons when it acted, how could reasons offered two years later be anything other than "*new* reasons for [the Board's] action after the fact?"  The government twists itself into knots trying to avoid that question because it has no answer.

This Court's recent decision in *End Citizens United PAC v. Federal Election Commission* addressed this same issue.[2]  69 F.4th 916, 919-21 (D.C. Cir. 2023).  There, as here, an agency acted without offering a "contemporaneous statement" to explain its reasoning.  *Id.* at 918-19.  That agency only provided an "after-the-fact explanation" once the petitioner sought review in district court months later.  *Id.* at

---

[1] The district court rested its exception to *Regents* on a single sentence from the *Regents* opinion.  App. Br. 30-31 (citing JA43-44).  But the district court's reading puts that sentence at war with both the remainder of *Regents* and the "values of administrative law" that drove that decision.  App. Br. 32-33 (quoting *Regents*, 140 S. Ct. at 1909).  On appeal, the government never invokes that reasoning and says not one word in its defense.

[2] The Court decided *End Citizens United* on June 9, 2023—more than seven weeks after Dr. Schacht filed her opening brief, and nearly two weeks before the government filed its response.

918-19. Yet, notwithstanding the no-*post-hoc*-rationalizations rule, the district court concluded that it could consider that "belated articulation" because it was "the only explanation these Commissioners have ever offered for their decision, so it does not contradict any justification expressed elsewhere." *End Citizens United PAC v. Fed. Election Comm'n*, 2022 WL 1136062, at *2 (D.D.C. Apr. 18, 2022). This Court reversed, holding that courts can "[c]onsider[] only contemporaneous explanations for agency action." *End Citizens United*, 69 F.4th at 922 (quoting *Regents*, 140 S. Ct. at 1909). And because that agency "did not proffer an initial explanation" *when it acted*, the Court held that "the 'limited exception' permitting an agency to supplement its initial explanation" was inapplicable. *Id*. (quoting *AT&T Info. Sys., Inc. v. GSA*, 810 F.2d 1233, 1236 (D.C. Cir. 1987) (per curiam)).

*End Citizens United* forecloses the government's arguments. Just as the appellees did there, the government argues here that the Board's years-later explanation only provided a "fuller explanation of the agency's reasoning at the time of the agency action." Gov. Br. 16. But because the Board "did not proffer an initial explanation in the administrative record," there was nothing "that could be later 'amplified.'" *End Citizens United*, 69 F.4th at 922. Accepting the "non-contemporaneous statement" would hinder "meaningful judicial review" by forcing litigants to "chase a moving target," and allowing an agency "to withhold the basis of its decision unless and until a lawsuit is filed" would "hardly 'instill[] confidence

4

that the reasons given are not simply convenient litigating positions.'" *Id.* at 923 (quoting *Common Cause v. Fed. Election Comm'n*, 842 F.2d 436, 449 (D.C. Cir. 1988); *Regents*, 140 S. Ct. at 1909; *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575-76 (2019)). Simply put, no value of administrative law is served by allowing an agency to "keep[] the complainant and interested members of the public in the dark" until the action is challenged in court. *End Citizens United*, 69 F.4th at 923.

Brotherhood of Locomotive Engineers & Trainmen v. Federal Railroad Administration *likewise supports Dr. Schacht's position. 972 F.3d 83, 117 (D.C. Cir. 2020). The government twists that case beyond all recognition to argue that the Court has permitted an agency to justify its action based on a "post-remand explanation" where that agency gave no contemporaneous reasons for its action. Gov. Br. 16. But that ignores the *result* in *Locomotive Engineers*—the Court vacated that agency action. *Locomotive Eng'rs*, 972 F.3d at 117; *see also* Judgment, *Locomotive Engineers*, No. 18-1235 (Aug. 28, 2020) (ordering that agency's "approval be vacated"). It therefore provides no support whatsoever for the government's position that an agency can use after-the-fact explanations to *avoid* vacatur. To the contrary, this Court's cases make clear that agency action cannot stand where "the required explanation of the agency's action is totally absent," lest remand invite a "wholly *post hoc* rationalization." *Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 798 n.2 (D.C. Cir. 1983) (per curiam).

Nor can the government find shelter in *Alpharma, Inc. v. Leavitt*, 460 F.3d 1 (D.C. Cir. 2006). While *Alpharma* admittedly permitted an agency to give a post-remand explanation to salvage a decision taken a decade earlier, it rested that holding on its view that the "*post hoc* rationalization rule" only "forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers." *Id.* at 6. *Regents* unequivocally rejected that reasoning. It explained that the prohibition bars "*post hoc* rationalizations, not advocate rationalizations, because the problem is the timing, not the speaker," and it therefore applies "with equal force" to "*post hoc* justifications" offered by lawyers and "agency officials." 140 S. Ct. at 1909. Indeed, Justice Kavanaugh *dissented* on this point, specifically relying on *Alpharma*. *Id*. at 1934 (Kavanaugh J., concurring in the judgment in part and dissenting in part). As this Court has previously recognized, this portion of *Alpharma* simply does not survive the Supreme Court's decision in *Regents*. *See End Citizens United*, 69 F.4th at 922.

The government's remaining cases likewise fail to support its position that an agency can act now and explain later so long as it was completely silent. *Muwekma Ohlone Tribe v. Salazar* relied on the same speaker-not-timing distinction that *Regents* rejected. 708 F.3d 209, 217 n.8 (D.C. Cir. 2013). And the agencies in *Olivares v. TSA* and *Tourus Records, Inc. v. DEA* both provided "contemporaneous explanation[s]" for their decisions. *Olivares*, 819 F.3d 454, 463 (D.C. Cir. 2016)

(contemporaneous memorandum); *Tourus Records*, 259 F.3d 731, 737 (D.C. Cir. 2001) (similar). Those cases are, therefore, worlds away from the Board's complete failure to provide reasons for its action "when it took the action." *Regents*, 140 S. Ct. at 1907. And they certainly do not support the government's claim that agencies are free to act without explanation now so long as they can manufacture some reason for their action years later after someone seeks judicial review.

\* \* \*

In short, the government gets the no-*post-hoc*-rationalizations rule exactly wrong. Nothing in administrative law supports the government's view that an agency can cook up reasons years later to justify its actions, so long as it violated its duty to give reasons in the first place. Its act-now-and-explain-later approach makes no sense. Tellingly, the government says not one word about how its rule would serve the "important values of administrative law" that motivate the no-*post-hoc*-rationalizations rule in the first place. *Regents*, 140 S. Ct. at 1909. Perhaps that is because the government recognizes that its approach would run contrary to those interests by encouraging arbitrary decision making, undermining confidence that the reasons agencies give are not just "convenient litigating position[s]," and stymieing efficient judicial review. *Id.* (alteration in original) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). The Court rejected that

reasoning in *End Citizens United* and should reject it again here. *See End Citizens United*, 69 F.4th at 922-23

**B.     Even If The Court Could Consider The Board's *Post Hoc* Rationalization, It Should Still Vacate The Board's Actions**

In its 2021 post-remand letter, the Board provided two rationalizations for its 2019 exclusion order.  JA29.  According to the Board, it excluded Dr. Schacht's evidence because: (1) "all exhibits, motions and requests were due to the [Board] . . . by October 7, 2019" and Dr. Schacht's "supplemental evidence file" was "late," and (2) "many of the documents were related to a discrimination-related case which was outside the Board's jurisdiction and scope."  *Id*.  Neither of those *post hoc* rationalizations can withstand arbitrary and capricious review.

*Timeliness*.  The government agrees (at 17) that the Board could only exclude Dr. Schacht's evidence for being untimely if it gave Dr. Schacht "reasonable notice" that all exhibits were due on October 7, 2019.  The Board failed to do so here—its scheduling order set an October 7, 2019, deadline for "pre-hearing motions or other requests."  JA211.  That deadline makes no mention of exhibits.  However, the same page of the scheduling order states that "[a]t th[e] hearing both parties will have the opportunity to present their cases through the examination of witnesses and the introduction of evidence."  JA211.  And the agency's handbook provides that "[a]t the conclusion of the hearing, the Chairperson will close the record," unless the Chair "authorizes" the submission of "documents identified for introduction into

evidence." JA832. Those conflicting and ambiguous rules never adequately informed the parties that the Board would summarily exclude any exhibits submitted after October 7, 2019. *See* App. Br. 38-39.

The government contends that admitting exhibits fit within the "plain meaning" of "pre-hearing motions or other requests" because "the Board's approval" was required to "admit [documents] into evidence." Gov. Br. 18 (quoting JA211-212). But there is no indication that "other requests" should be read as encompassing *every* matter that requires Board approval. Even though admitting witness testimony required the Board's approval just as much as the admission of documents, the Board's scheduling order set a separate (and different) deadline for the parties to submit (and object to) witness lists. JA211 (stating Board has "final authority to determine the acceptability of any witnesses"). A reasonable person would, therefore, have good cause to think that "other requests" covers things that are similar to "pre-hearing motions," not any request that might require the Board's stamp of approval.

*General Electric Company v. United States Environmental Protection Agency*, upon which the government relies, is instructive on this point. Gov. Br. 18 (citing 53 F.3d 1324, 1330 (D.C. Cir. 1995)). Fair notice, this Court explained, turns on whether, after reading an agency's rules and other public statements, "a regulated party acting in good faith would be able to identify, with ascertainable certainty, the

standards with which the agency expects parties to conform." *Gen. Elec.*, 53 F.3d at 1329 (internal quotation marks omitted). Notice is not fair where the "specific regulation" is "silent" on the question and "other regulations offer[] 'baffling and inconsistent' advice." *Id*. at 1330 (quoting *Satellite Broad. Co., Inc. v. F.C.C.*, 824 F.2d 1, 2 (D.C. Cir. 1995)). Nor is it fair where the regulations are "unclear," "ambiguous," or could "reasonably be read" multiple ways. *Id*. at 1329-30 (internal quotation marks omitted).

The vague reference to "other requests" in the Board's scheduling order flunks that test. "On [its] face," the order is "silent" as to exhibits. *Id.* at 1330. While the Board might "permissibly conclude" that an exhibit list is a "pre-hearing motion or other request," JA211, "such a characterization nonetheless strays far from the common understanding" of what those words mean. *Gen. Elec.*, 53 F.3d at 1331.[3] Indeed, the agency read the Board's order the same way—it even submitted additional exhibits of its own on the same day that Dr. Schacht submitted her supplemental evidence file. App. Br. 39. That is powerful evidence of a notice problem because "it is unlikely that regulations provide adequate notice when

---

[3] The Board's 2021 post-remand letter tries to duck the issue. While the Board's 2019 scheduling order only covered "motions or other requests," JA211, the Board's letter rewrote that deadline to encompass "all *exhibits*, motions and requests," JA29 (emphasis added). The fact that the Board felt the need to rewrite that deadline speaks volumes about the ambiguity of the order it had issued two years prior.

different divisions of the enforcing agency disagree about their meaning." *Gen. Elec.*, 53 F.3d at 1332. The government cannot explain how the agency's own attorneys missed what it now calls a plain reading of the Board's order.

Other portions of the Board's scheduling order and statements in the agency handbook amplified that uncertainty. *See* JA211, JA832. The government argues that those statements about introducing evidence at the hearing and the potential to admit documents after the conclusion of the hearing can be read to be "consistent" with its expansive interpretation of "other requests." Gov. Br. 18-19. But the government does not—and cannot—dispute that those statements "could reasonably be read" as stating that the parties could produce additional documentary evidence during the hearing itself or even after that hearing concluded. *Gen. Elec.*, 53 F.3d at 1329-30 (quoting *Gates & Fox Co. v. Occupational Safety & Health Rev. Comm'n*, 790 F.2d 154, 1330 (D.C. Cir. 1995)). And the Board silently accepted evidence submitted after the supposed October 7 deadline, without ever mentioning that the evidence was "late." JA223.

The government acknowledges (at 19-20) that the Board accepted exhibits (and motions) submitted after the October 7 deadline that the Board now treats as an absolute cutoff. *See* App. Br. 40; JA211. To hear the government tell it, the Board identified a good reason to accept these post-deadline filings while rejecting other post-deadline filings. Gov. Br. 19-20. Because the Board's post-remand letter noted

11

that Dr. Schacht's supplemental evidence was submitted "just before the hearing was set to begin," the government concludes that such evidence was "material[ly] differen[t] from earlier requests" made after the deadline. *Id*. at 19-20 (quoting JA29, emphasis omitted).

Those few words cannot bear the weight that the government puts on them. The Board's statement does not provide a reason why that evidence was excluded; it merely says when it was submitted. The government suggests that the Court can read between the lines and infer that the Board decided that some post-deadline submissions were just too late (even though others were apparently acceptable). *See* Gov. Br. at 20. The Board, however, said no such thing. It said that it set an October 7, 2019 deadline and excluded Dr. Schacht's exhibits because they were "late," without ever drawing a distinction between earlier and later post-deadline submissions. JA29. The government's attempt to put words in the Board's mouth is particularly improper here because the Board had to both supply a reason *and* "display awareness that it is changing position" from its earlier, more lenient approach to its supposed deadline. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quoting *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515

(2009)). The Board did neither, and "[i]t is not the role of the courts to speculate on reasons that might have supported" its change of heart. *Id.* at 224.[4]

*Relevance.* The Board's claim that it excluded Dr. Schacht's evidence on relevance grounds is equally arbitrary. Contrary to the Board's claims, documents about the events underlying the Board's order do not somehow become irrelevant simply because they also "relate[] to a discrimination-related case which was outside the Board's jurisdiction." JA29. That is not how relevance works. Documents gathered in criminal proceedings can (and often are) relevant to later SEC administrative proceedings, even though the SEC lacks jurisdiction to prosecute criminal cases. *See, e.g.*, *In re Sealed Case*, 676 F.2d 793, 824 (D.C. Cir. 1982). And documents related to claims within the exclusive jurisdiction of federal courts— like bankruptcy, antitrust, and securities—do not somehow become irrelevant in related state-court proceedings. The Board's claim that it had to exclude any documents that relate to matters outside its jurisdiction was, therefore, arbitrary.

---

[4] Nor would the distinction that the evidence was later—if the Board had made it—provide a valid reason. The Board did not identify any additional prejudice for this lateness. Its post-remand letter confirms that the Board still had time to "review" and reach conclusions about "the documentation" submitted in Dr. Schacht's supplemental evidence file. JA29. And the agency had sufficient time to prepare a lengthy written objection that addressed those exhibits on a document-by-document basis. JA238-239.

The government contends that the Board was right to exclude these documents because it "had neither the authority nor the institutional competence to evaluate purported evidence of discrimination." Gov. Br. 21. That response is a red herring. Reviewing the *factual content* of those documents does not force the Board to adjudicate claims outside their jurisdiction or competence. Nothing in law or logic supports the Board's view that it can shut its eyes to facts concerning the misconduct charges within its jurisdiction simply because those facts are contained in a document that also relates to a discrimination claim. To state that claim is to refute it. The Board's contrary claim lacks any reasoned basis.

### C.    The Board's Error Prejudiced Dr. Schacht

Dr. Schacht more than satisfies her burden "to explain how admission of [the excluded] evidence . . . *might* have changed" the Board's decision. *Prairie State Generating Co. v. Sec'y of Labor*, 792 F.3d 82, 94 (D.C. Cir. 2015) (emphasis added) (quoted at Gov. Br. 21). Far from being a clear-cut case, the Board was faced with a record awash in substantial conflicting evidence on both the misconduct and penalty issues. *See* App. Br. 43. Seeking to distract from this conflicting evidence the Government asserts that Dr. Schacht caused "adverse effects on patient care" and "endangered patient safety," Gov. Br. 4, 7, but the Board made no such findings. To

the contrary, the Board "validated" Dr. Schacht's medical decisions, JA800-802.[5]

In her opening brief, Dr. Schacht explained (at 42-50) in exhaustive detail how her excluded evidence would have contradicted the Board's core findings on both the misconduct *and* the penalty issues. Given the hotly disputed nature of these proceedings, it is clear that those exclusions, at minimum, *might* have tipped the scales on those questions.

The government tries (at 22) to dismiss that prejudice as "speculat[ive]." But that flips the harmless-error inquiry on its head. An error is harmless only where there is "not the slightest uncertainty" that it did not change the outcome. *Manin v. NTSB*, 627 F.3d 1239, 1243 n.1 (D.C. Cir. 2011) (internal quotation marks omitted). But where it is "possible" that an agency could reach a different result, the Court "must . . . set aside" an agency's action and remand. *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (prejudice even where an agency "*might* have reached the same result")

---

[5] The Ohio and Colorado state medical licensing boards likewise found no fault with Dr. Schacht's professional conduct based on the specifications that were at issue before the Board. After considering the evidence, both state boards declined to pursue disciplinary charges and dismissed proceedings against Dr. Schacht. App. Br. 20 n.6; Dkt. 64-3 (decision of Colorado Department of Regulatory Agencies); eLicense Ohio Professional Licensure, License Look Up – Elizabeth Schacht, https://perma.cc/JX5M-LYME (last visited July 26, 2023).

(emphasis added).  Judged against the actual standard, Dr. Schacht clears the bar easily.

Equally unavailing are the government's efforts to minimize particular pieces of evidence that contradicted the Board's decision.  When assessing prejudice, the Court must examine the "cumulative effect" of excluding the evidence, rather than looking at each exhibit in a vacuum.  *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam).  The excluded evidence here, when viewed as a whole, contradicts the Board's core findings that Dr. Schacht had consistent and long-standing communication problems and was a root cause of the Hospital's "toxic environment."  App. Br. 44-50.  That evidence also bore directly on the Board's penalty factors, including Dr. Schacht's work history and the consistency of the penalty with what the agency had imposed for similar offenses.  *Id.* at 47-50.

The government's quibbles about individual excluded exhibits are unpersuasive in any event.  The government insists (at 22) that Dr. Schacht's prior performance reviews "had minimal (if any) relevance to [the] Board's inquiry."  But it offers no response whatsoever to Dr. Schacht's detailed explanation of their relevance to the Board's conclusions on both misconduct and penalty.  App. Br. 45-46 (misconduct), 47-48 (penalty).  Lest there be any doubt, the Board repeatedly emphasized that its decision rested on its conclusion that Dr. Schacht's "work record" showed that she "always" had communication problems and that those

problems were consistent during her years at the agency. JA799-800, 802-803; *see also* JA813-814 (regulations requiring Board to consider "past work record" in assessing penalty). For example, the Board relied on its conclusion that Dr. Schacht always had communication problems to downplay her high-risk pregnancy as a mitigating factor, and mitigation was particularly important here where the Board upheld the harshest possible penalty. JA803; *see Saad v. S.E.C.*, 718 F.3d 904, 913 (D.C. Cir. 2013). Indeed, even the government doubles down on those supposedly "long-standing problems communicating" in urging affirmance. Gov. Br. 27. Against that backdrop, the prejudice of summarily excluding the years of stellar reviews and effusive praise that Dr. Schacht had received from the agency and her former colleagues is readily apparent.

The government has even less to say about the excluded exhibits that speak to Dr. Ian Black's credibility. Those exhibits show that Dr. Black overrode another doctor's prior decision to give Dr. Schacht a performance bonus because it would have "undermine[d] the argument that she is a substandard performer." JA374-376. The government tries to spin that document as Dr. Black merely responding to the results of a proficiency report. Gov. Br. 23. But that proficiency report brings Dr. Black's bias into sharp relief because Dr. Sean Shockey—who authored that proficiency report—is the same doctor who decided to award Dr. Schacht a performance bonus only *one week* later, finding that "[m]ost [of the agency's

performance] metrics were met." JA371-372 (Oct. 31, 2017 performance report); JA375 (Nov. 7, 2017 performance pay decision). Only months later did Dr. Black seek to reverse that decision because it "undermine[d]" his preferred narrative of Dr. Schacht as a problem employee. JA374 (Mar. 26, 2018 email). Had the Board seen this evidence, it very well may have viewed Dr. Black's testimony more critically.[6]

The government similarly tries to sidestep a Congressional report detailing dysfunction in the Hospital's anesthesiology department. Gov. Br. 23. That report, the government says, could not have had any bearing on the Board because it "sheds no light on whether Dr. Schacht herself *contributed* to that general lack of teamwork." *Id*. (emphasis added). That misses the point. As the government elsewhere acknowledges, the Board put substantial weight on its conclusion that Dr. Schacht "*created* a toxic environment" at the Hospital. Gov. Br. 26 (quoting JA802) (emphasis added); *see also* JA803 (same). The Congressional report, by contrast, makes plain that the widespread "lack of teamwork," hostility, and dysfunction at the Hospital stemmed from years of mismanagement, not any one individual. *See*

---

[6] Nor can the government dispel that prejudice by observing that "Dr. Schacht had the opportunity to cross-examine Dr. Black." Gov. Br. 23. The government elides the fact that the Board repeatedly admonished Dr. Schacht's counsel that he could not mention the excluded evidence during any portion of the hearing. JA719-720, 755-756. Giving Dr. Schacht an opportunity to examine Dr. Black while preventing her from using the documents that would impeach his credibility does nothing to cure the prejudice.

JA493.  Had the Board considered that evidence, it may well have rejected the agency's efforts to scapegoat Dr. Schacht for those systemic issues.

Finally, the government disputes (at 24) evidence that Dr. Schacht sought to submit about another doctor who was suspended—rather than removed—due to supposed problems with communication.  While the government faults Dr. Schacht for making only a "superficial comparison," *id*., the two doctors held similar positions at the same hospital and were both accused of similar misconduct.  *See* App. Br. 49 (summarizing evidence).  Nurses filed numerous complaints against that other doctor based on his communication problems and aggressive demeanor over the course of several years, starting in at least 2016.  JA456, JA460, JA464, JA470, JA472, JA483-486.  Although those complaints alleged that the doctor posed a clear-and-present danger to patients, the agency first responded by issuing the doctor a memorandum (from Dr. Black) on effective communication in January 2018.  JA475-476.  Only after that misconduct persisted did the agency eventually place that doctor on leave.  JA487-491 (complaints through October 2018); Dkt. 21-2 at 34.  By contrast, the agency terminated Dr. Schacht and revoked her privileges without warning or the counseling required by agency regulations.  *See* App. Br. 9-10 & n.3, 16-17.

The Board never considered that disparity in its consistency of penalty analysis.  Instead of adjusting the penalty for Dr. Schacht or explaining why the two

doctors deserved such radically different penalties notwithstanding the similarities in position and misconduct, the Board prohibited all mention of that other doctor's case. *See* A.R. at 1132 (refusing to permit Dr. Schacht's counsel to examine a witness on that topic). Had Dr. Schacht been permitted to introduce this evidence and use it to examine witnesses, she would have developed a more robust record on this issue. While the government now contends that the two doctors are not similar enough, the extent and weight of the comparison are questions for the Board to resolve in the first instance. *See, e.g.*, *Williams v. Soc. Sec. Admin.*, 586 F.3d 1365, 1369 (Fed. Cir. 2009) (vacating and remanding for new penalty determination based on potential comparator).

Finally, the government retreats to arguing (at 22) that the excluded evidence was all cumulative because the Board heard "other evidence on [these] topics." (quoting JA51). It is wrong because the Board excluded any mention of the other doctor who received a far less harsh punishment for his pervasive and long-running communication problems. *See* A.R. at 1132. Moreover, much of the evidence that Dr. Schacht sought to introduce was different in kind from the evidence the Board considered—e.g. contemporaneous documents that provided black-and-white support for her claims compared to testimony given years after the fact. And it misses the point because, in a hotly contested case like this one, prejudice is the "natural effect" of excluding evidence that would have contradicted the Board's

conclusions. *See Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 254-55 (4th Cir. 2016).

\* \* \*

When considered as a whole, the exclusion of this evidence created obvious prejudice. The Board found that Dr. Schacht was "always very difficult," that she had an "inability to communicate and to have a discussion and be collegial," and that she "created a toxic environment." JA799, JA801-802. The evidence it excluded said otherwise. The agency had previously found no fault with her communication skills, and the "toxic environment" that she supposedly created actually resulted from years of mismanagement and inefficiency. And it would have shown that the agency treated another doctor accused of similar misconduct much less harshly. Because the Board's evidentiary exclusions tipped the weight of the evidence in the agency's favor, those exclusions were not harmless. *See Kotteakos v. United States*, 328 U.S. 750, 763 (1946).

## II. THE BOARD FAILED TO CONSIDER A RELEVANT FACTOR IN ITS PENALTY DETERMINATION

Before imposing a penalty, the Board was required to consider "[t]he adequacy and effectiveness of [an] alternative sanction to deter such conduct." JA803; *see also* JA813-814. Rather than giving a reason why only the harshest available punishment would sufficiently "deter" future misconduct, the Board simply stated that Dr. Schacht's offense "was serious enough to warrant removal."

JA803.  The government suggests that sentence is close enough because commenting on seriousness essentially "convey[ed] the Board's conclusion" on deterrence too. Gov. Br. 24.  But agencies have to say why they reached a conclusion—courts are not meant to read administrative tea leaves and guess about what an agency might have meant.  *See United Airlines, Inc. v. Transp. Sec. Admin*., 20 F.4th 57, 64 (D.C. Cir. 2021).  That is particularly true here given that the "nature and seriousness of the offense" and the need for deterrence are separate factors that the Board must consider.  *See* JA813-814 (agency handbook).  Because the Board failed to do so, its penalty determination should be vacated and remanded.  *Purifoy v. Dep't of Veterans Affairs*, 838 F.3d 1367, 1371-72 (Fed. Cir. 2016).

Perhaps realizing that one conclusory sentence is "insufficient," the government argues (at 25-26) that other portions of the decision "obviate[e]" the need for any specific finding on deterrence.  It argues that the Board had already settled on removal because it would have been too "difficult" to return Dr. Schacht to her job at the agency.  But those concerns nowhere demonstrate that the Board considered the separate—and required—question of deterrence.  Because the Board "entirely failed to consider an important aspect of the problem," its decision to uphold the termination of Dr. Schacht was arbitrary and capricious.  *Saad*, 718 F.3d

at 260-61 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).[7]

## CONCLUSION

For the reasons stated herein, the Court should reverse the district court's grant of summary judgment, vacate the Board's exclusion and penalty determinations, and remand for the Board to consider the issues afresh in a new administrative action.

Dated:     July 26, 2023

<div style="margin-left: 40%;">

*/s/ Brandon L. Arnold*
Brandon L. Arnold
Mark H. Russell
KRAMER LEVIN NAFTALIS & FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202.471.3043
Facsimile:  202.775.4510
Barnold@Kramerlevin.com

*Counsel for Appellant*
*Elizabeth Schacht, M.D.*

</div>

---

[7] Contrary to the government's claims (at 26), Dr. Schacht does not "ask[] the Court to reweigh the evidence." Her argument is that if the *Board* had actually considered the deterrence question, the record gives good reason to think it could have concluded that "something less extreme could get the job done on deterrence." App. Br. 52-53.

# CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g)(1) and D.C. Circuit Rule 32(e)(2)(C), I certify that this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 5,404 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Times New Roman, 14-point font.

/s/ Brandon L. Arnold
Brandon L. Arnold

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on July 26, 2023. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Brandon L. Arnold
Brandon L. Arnold